JOHANN REICHEL, Respondent, *v.* THE NEW YORK CEN-
TRAL AND HUDSON RIVER, RAILROAD COMPANY, Ap-
pellant.

*Court of Appeals, January 20, 1892.*

1. *Negligence. Master and servant.*—In view of the fact that the usual
mode of freeing locomotives of their ashes before taking them into
the round-house is by means of ash-pits like the one in question, it is
error to instruct the jury that they may find that the yard is improperly
constructed on the simple isolated fact that the ash-pit and water-plug
are so located that a locomotive can take water and be freed from its
ashes at the same time.
2. *Same.*—Where the company has employed an engineer and helper to at-
tend an engine, and the fact that the helper did not ride on the locomotive
on its trip from the switch to the round-house was the fault not of the
company, but of the helper himself or the engineer, the company is en-
titled to have the jury instructed that negligence cannot be found from
the fact that but one person was on the locomotive at the time of the
accident.

Appeal from a judgment of the general term of the supe-
rior court of Buffalo, entered on a verdict which was reviewed
at the general term in the first instance.

*E. C. Sprague,* for respondent.

*James F. Gluck,* for appellant.

FOLLETT, Ch. J.—This action was brought by an employee
against his employer to recover damages for a personal
injury occasioned by the negligence of a co-employee.   The
accident occurred in the yard of the West Shore Railway at
Buffalo, while that corporation was in the hands of receivers.
Afterwards the defendant became the lessee of their railway
and assumed the liabilities of its receivers.

The gravamen of the complaint is that the receivers negligently employed an unskillful and careless servant, whose negligent conduct on the occasion in question caused the injury.   The negligence of the receivers is set forth in the following language :

" That on or about the 7th day of May, 1885, the said receivers of said railway so negligently and carelessly conducted, directed and managed said railway and their employees, and employed, engaged and continued in their service upon said railway unskillful, incompetent and unlearned workmen, known to said receivers, or of which they had means of knowledge, whereby the injury was occasioned.   *   *   * "

" That said injuries were caused solely and by reason of the negligent and careless directions and management of said railroad and the employees by said receivers, and the negligent and careless employment of unskillful, unlearned, reckless, incompetent and worthless workmen in, about and upon said locomotives, yards, tracks, dangerous machinery, etc., and in the operation thereof at their instance, and with full knowledge or means of knowledge of said receivers." Wilber G. Sartwell, the engineer in charge of the locomotive at the time of the accident, was the only employee whose skill and care the plaintiff attempted to impeach on the trial, and the only negligence imputed to him as a cause of the accident was that he approached the ash-pit with his locomotive without ringing its bell.   Whether it was rung was a disputed question of fact, and so was the issue whether Sartwell had previously been unskillful and reckless in moving locomotives in the yard, to the knowledge of his superior officers, or so frequently and under such circumstances that it was negligent in them not to have known of his conduct.

Whether the court erred, in submitting these questions to the jury, or in the instructions by which they were submitted, need not be considered, as we think a new trial must be granted for an instruction relating to another branch of the

case.   The court said : " It is claimed by the plaintiff that
the negligent and improper construction of the defendant's
track, and the relative position of the water-plug, and the
stopping place of the ash-pit was an improper and negligent
construction of it.   It is for you to say whether that is so."
To this instruction the defendant took an exception, and
asked in various forms the court to instruct the jury that
there was no evidence which would authorize them to find
that the yard was improperly or negligently constructed,
which was refused, and an exception taken.   In this we
think the court erred.   At the time of the accident there was
in the defendant's yard at Buffalo a round-house, with stalls
or compartments for twenty locomotives, which faced east
and immediately in front, partly within and partly without
the segment of the circle occupied by the building, is a turn-
table, from which four tracks extended easterly and were
connected by switches with various tracks in the yard.
Track No. 1 was known as the ash-pit track.   No. 2 as the
turn-table and yard track.   No. 3 as the coal track.   No. 4
as the back track.   One hundred and twenty feet east of the
turn-table, and between the rails of track No. 1, there was an
excavation, 170 feet in length and from three to four feet
in depth, called an ash-pit, into which ashes from the locomo-
tives were dumped, and afterwards shovelled out and carried
away.   Twenty-nine feet east of the east end of this pit there
was a water-plug, from which water for the locomotives was
taken and also water to cool the ashes in.the pit.   Further
east this track curved to the right.   When a locomotive
headed west towards the round-house stops opposite to this
plug to take water it covers twenty-five or thirty feet
of the east end of the ash-pit, and water was taken and ashes
dumped at the same time.   Afterwards the locomotive was
moved by the power of its accumulated steam into the round-
house.

It was the custom of the defendant to give water to its
locomotives which were going into the round-house, and free

them from ashes, in the way described. Before April 30, 1885, the plaintiff had never been employed about a railroad, but on the date mentioned he hired to the receivers of the West Shore Company to work as a common laborer in the Buffalo yard. He was hired by Henry Conrad, who was sworn as a witness for the plaintiff, and testified : " I hired this man Reichel ; he understood the kind of work he was to do ; he was to go shovelling these things and do work around the round-house ; he went to work with the other men, and was doing· this wrecking off and on, to the day of the accident ; I had eight or ten men in my employ at that time ; I saw this man Reichel there ; he is a fairly intelligent man, appears to know his business and to be able to attend to it." The plaintiff testified that Conrad notified him to look out for the locomotives.

On the 7th of May, 1885, the plaintiff was engaged in shoveling ashes from the east end of this pit, and seeing a locomotive approaching from the east attempted to get out of the pit, but he was caught, and his left leg crushed by the wheel of the locomotive, so that amputation was necessary. Frank Brenning who was at work in the pit with the plaintiff, lay down upon the approach of the locomotive, and was not injured. The only evidence of negligent construction of the defendant's yard was in the nearness of the water plug to the ash-pit.

It was shown by undisputed evidence, that the usual mode of freeing locomotives of their ashes before taking them into the round-house was by means of ash-pits like the one in use in this yard, and we do not think the jury should have been instructed that they might find that the yard was improperly constructed on the simple, isolated fact that the ash-pit and water-plug were so located that a locomotive could take water and be freed from its ashes at the same time. At the time of the accident, and for a few moments previous thereto, but one person, Sartwell, the engineer, was on the locomotive. Some discussion occurred between the court and counsel,

after the charge had been delivered, as to whether the defendant could be found liable because a second man was not on the locomotive at the time of the accident.

Among other requests the following was proffered, declined, and an exception taken : " I ask the court to charge that, the evidence being undisputed that in the performance of the work in the shop yard, in the operation of the road, that the engines were always operated by one hostler, and that such method had been found sufficient in the business of the road up to the time of the injury. The jury cannot consider the fact that there was but a hostler, and not also a helper on the engine with him, as a ground for finding that the receivers failed to furnish a sufficient number of men to run the engine and operate it properly."

Philip Sauer, a witness who testified in behalf of the plaintiff, said ; " I saw Mr. Reichel after the accident happened. They had taken him out and were putting him on the engine to take him up to the city. Mr. Sartwell was in charge of that engine. I know Mr. Sartwell ; he was working with me, I was helping him. He was a hostler on running engines in and out there. I had assisted him not more than a week." * * * " I was helping Sartwell. Seventy-nine was the number of the engine that caused the injury to this plaintiff. I was in the round-house at the time of the accident. That is about two hundred feet away." * * * " I was on this particular engine, No. 79, during the time that it came up to the switch. I do not recollect the circumstance whether or not the bell was ringing on that engine. I wouldn't say positively whether she stopped at the water-plug. I got off the engine at the switch, and I wouldn't go up that track to the round-house. I would go around back of the round-house and up into the round-house, but of course I didn't go up the other track until after he started with the engine. It was moving when I left it at the switch, and I couldn't see it any more after I walked ten feet." " At the time I jumped off this engine at

the switch, I didn't see it except for about ten feet.    I then lost sight of it and went round to the round-house.    To get to the round-house it didn't take but, I should say, a moment or two."

The defendant did not negligently fail to provide this locomotive with two employees, for the undisputed evidence is that Sartwell was employed as the engineer and Sauer as his helper.    The fact that the helper did not ride on the locomotive on its trip from the switch to the round-house, was not, so far as is disclosed by the evidence, the fault of the defendant, but of Sartwell or of Sauer, both of whom were co-employees with the plaintiff.    The defendant was entitled to have the jury instructed that negligence could not be found from the fact that but one person was on the locomotive at the time of the accident.

The judgment must be reversed and a new trial granted, with costs to abide the event.

All concur, except POTTER, J., not voting.